Thank you, Your Honors. May it please the Court, my name is Bill Pickett. I'm from Yakima and I represent Appellant Elva Garcia in this matter. This is a failure accommodate case. There was a summary judgment ruling that we're appealing. The issue is, for the Court today, is whether there was sufficient notice for the employer of the need for accommodation and if that notice was provided, did they engage in the interactive process. We're asking the Court to reverse the trial court and send it back. Our position is there are contested issues of fact and the facts are this. In August of 2011, Ms. Garcia had been working at the Cintas Laundry Facility in Yakima. It's a commercial laundry facility that handles uniforms for various employers or various corporations. Ms. Garcia had been working there since 2003. She was working in various sort positions where these workers sort laundry. There's a lot of physical grabbing of the clothing, pinching and grasping of the hand. And in her case, in August of 2011, she noticed significant pain in her left wrist area and it was subsequently diagnosed as a de Quervain's tenosynovitis, which is, I call it a wrist injury. Is it fair to say that the first injury was resolved? No. Why not? It's not, Your Honor. If you look at the record, and I think there's an assumption that it's completely resolved. That condition doesn't resolve. It's pain-free, though. That's clearly in the record. So when it became pain-free, would it be your position at that point that an accommodation was required? There would be an ongoing accommodation that would be necessary and they were providing that. In August, when the human resources manager went, Ms. Evans went to the doctor with Ms. Garcia, where this diagnosis was made, the employer then did appropriately accommodate and it was done with a simple accommodation of allowing Ms. Garcia or showing her how to fold garments with one hand as opposed to two. If she told everyone that her wrist was fine in early November and she didn't provide any medical documentation that working on first sort would aggravate her wrist, why is her August injury relevant to whether Cintas had proper notice in late November or December? Ms. Garcia's testimony, Your Honor, is that she was pain-free, not that she was fine. She was pain-free, which is absolutely going the right direction with this type of tendonitis injury, given that the employer had allowed her accommodation since the August diagnosis. What she told the employer when in mid-November, another employee apparently was out on medical leave, supervisor comes to her and says, hey, I need you to fill in on the first sort. She says, well, if I do that, I'm going to, I can only, maybe I could make it two weeks, given the grasping and the pinching that's required for that position. Okay, so she's not asking, even by her own inferences, she's not asking for accommodations for two weeks. She says, I can do that for two weeks. No, I think she's saying I'll give it a try, but she's also telling the employer at that time, the supervisor, that this is going to, I'm not going to be able to continue to do this because the accommodations that I'm receiving, I work with one hand right now in the fold. And the employer knew that. They knew that. That was indisputed. So what accommodation does she seek? She, well, she would have, the ongoing accommodation to stay at the fold, in the fold, the fold section or fold station, folding using one hand and sorting hangers was the accommodation that was effective. That was working. Was that one hand in the first sort position? Her position is no. It was awkward. And later on, the employer, in January, when they're clearly on notice that this has re-aggravated her left hand, the employer says, well, do it with one hand. But back in November, when they move her to that position, and she tells, in the record, she tells the supervisor, look, this is going to, this is going to hurt my arm again. If I keep doing this, it's going to aggravate. And the employer doesn't say then, it's interesting, doesn't say, well, why don't you just do this first sort with one hand? It's only later, in January, January 3rd, where she's, or January 4th, goes to the doctor, brings a note in on January 5th, 2012, that the supervisor says, well, to do that with one hand. And she says, well, that's possible, but that's not really, that's very awkward. She says, well, she says it's awkward, she says, I'll slow down the, slow down the line. Right. But, if the employer doesn't care if the line is slowed down, why is it her place to say, I'm not going to do it that way? Yeah, she doesn't say she won't do it, she says, it's going to hurt me. It's actually, she's hurt at that point in time. Remember, she went from November, every day, repeatedly telling the employer, her supervisor, this is hurting me now, I need, when are you going to get that person that you faithfully told me you would get to replace me within a couple of weeks? It never happened until her wrist was then done, in January, for four to six weeks later. But the record is, she repeatedly told the employer, I got this wrist injury, if I keep doing this first sort position that you've moved me into, I'm going to do it, because you're short, you're, essentially, you're shorthanded, employer. You have somebody out on medical leave, so she steps up, and in a sense, it was kind of a no-good-deed-goes-unpunished scenario, where she does it for a while, keeps telling them, though, reminding them that, I do- I don't think they think that your employee, I don't think they think of her as a no-good-deed-goes-unpunished. They clearly don't, Your Honor. You know, there seems to be an undercurrent here of, this is a very difficult employee, and then she doesn't want this, she doesn't want that, and then there's kind of an explosion, I guess, between, and then, then she ends up getting fired, right? Yeah, but I think- But we're here only on the failure to accommodate. We're not here on a retaliation. Correct. We're not here on a wrongful termination. Correct, Your Honor. So, we have to look at the four corners of the complaint. Correct, and I think the question on this no-good-deed-goes-unpunished- So, the fact that she's difficult, how does that, the fact that that's in the record, how did those inferences work for you? That doesn't stop them from accommodating, and the fact, if you look at the difficulty that they're focusing in on, they're talking about working this employee for all of November, December, to the point where she's actually can't do it, it's unbearable, she can't do it anymore, and then there's this confrontation where she says, they finally say, well, let's watch you do it with one hand, this is the first time they say this to her in the first sort position for six weeks. She says, she's not telling them no, and ultimately, she did come back and say, okay, I'll try it. They had an argument, and the record is, she actually said, I'll do it, but then the supervisor said, well, I don't know that I trusted that she'd do it safely, so what they end up doing is they let her go back to the fold position. But the district court said that Ms. Garcia testified that she refused to attempt to work at the first sort position with one hand. That was initially in January, she said, look, I don't want to do that, it's awkward, it's going to slow down the process, but later on in the record, she does say, she says, no, I went ahead and I agreed, okay, I'll do it, I'll do it. Where's that in the record, that she ultimately agreed that she would do the first sort position with one hand? It's in the statement of facts, Your Honor. Now, where's the testimony that she said? I was using defendant's statement of facts. And I think it's also in the defendant's statement of facts, as well as in her declaration, where she ultimately goes back and says, I will do that first sort, but then, because they had suggested first sort, one-handed, and then go do the bin, pull the heavy laundry, wet laundry out of the bin, and she says, those aren't really one-handed jobs, essentially. So then they say, well, go ahead, she's going to do the, she says, well, I will do the first sort then, if you force me. That was after the anger had manifested. Yes, yes, correct. She's going to do it, and then it's the supervisor who says, no, I don't trust she's going to do it safely. I'm going to put her on the fold, which is where she wanted to be, and should have been, all the way back in November and December, when she kept telling her supervisor, I'm hurt, this risk condition, it's hurting me, when are you going to get the replacement that you promised? I said I'd do this for a couple of weeks. It's now been six weeks, and I can't do it anymore. I think that's sufficient notice. Clearly they knew in August she had this hurt wrist. Clearly she told them when they asked her, would you fill in for this employee out on medical leave? If you take her testimony, she told them, I'll do it, but I can't do it for more than a couple of weeks, because this is going to aggravate this condition. And then her testimony that says she repeatedly told the supervisor, almost daily, that you've got to get me that replacement, until she breaks in January. Did she tie that into the wrist injury, or did she just say, when are you going to get the, where in the record did she tell the supervisor that she needed the replacement for her wrist, as opposed to she just wanted the replacement because he had told her there would be one? If you go to her testimony, volume two, excerpt of record, volume two, pages, I believe it's 48 through about 51. And you'll see her testimony talking about how she told the supervisor, almost daily, and I'll look, I'll... Here's the time here to do it. Yeah. Well, if you look at 48, 49, and 50, 51, it's her deposition testimony, and there's argument over that. The supervisor flat out disputes it, and says, no, that's, essentially, she didn't tell me that, that wasn't what I was told. But that's what she says. So, on summary judgment, I believe, in that, if you look at the December time period, there's a lot of talk about January, and what went on there, but our position is the accommodation should have been going in November and December. And they already, we knew they could do the accommodation, because they'd done it from August to September to October, and it was really simple. Let her fold, go to the fold area, and do it one-handed, and she did it successfully. So, in December, it was their duty, if you find the notice issue was sufficient, that they knew she had this disability, this injury, and that she, based on her testimony, that she told them that I'm going to hurt my wrist if I keep doing this, that's sufficient notice. And then you say, well, that triggers the duty to accommodate, and it's not the duty to accommodate in January, when there's this dispute. It's the duty to accommodate a whole month of December. Get her out of the first sort position, where she's getting hurt, and put her on the folding that she was doing that actually got her to a point, excuse me, being pain-free. That's our position. All right. Thank you, counsel. Thank you. We'll hear from opposing counsel. Thank you. If you'd like to save your remaining time for rebuttal. I will reserve. Thank you. All right. Thank you. May it please the court. Jennifer Colvin for defendant appellee, Sintas Corporation, number three. Good morning. Good morning. I think it's important here to distinguish the term disability from injury, because plaintiff's counsel has used them interchangeably, and they are not under Washington law. A disability under Washington law is a physical abnormality that causes substantial physical limitations. And here, the reference to the August 2011 injury, Sintas' duty to accommodate that injury had ceased once the injury was healed, and there was no physical limitation remaining. She was pain-free. And contrary to argument just now, she was not folding garments one-handed, but rather using an alternate folding technique where she used her left wrist in a straight way that she folded garments with both hands. So utilizing both hands and pain-free as of the time she is asked to substitute in in the first sort position, a position in which she did not injure herself. So this is a new position for her, one that she'd been trained on, that she was fully capable of performing and pain-free. Here's what I need for, I'm going to express my concerns here, and I would like you to respond to it. And I'm going to kind of put them all in a mass. Sometimes you get cases where a judge, and I was a trial judge, you can look at it and say, hey, this isn't a very good case. This dog don't hunt. But that's not the standard for summary judgment, all right? And so tell me why, here's my concerns about where there might be a triable issue and why it's not. All right, she'd already hurt her wrist in August, and Sintas knew about it. I think you just said, does it make sense to require her to bring a doctor's note to show her wrist injury might be aggravated by working in first sort position? Well that's Washington law. If you're going to rely on a prediction of future harm, then under revised code of Washington 49.60.040 subsection 7D, for purposes of qualifying for a reasonable accommodation, the impairment must be known, and under subsection 2, the employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create substantially limiting effect. So that is Washington law. If there is a prediction of an aggravation, it must be accompanied by medical documentation to qualify as notice for a reasonable accommodation. Okay, so Garcia at least twice, I think through her deposition or declaration, she told her supervisor about her wrist pain in late, this is what she says, in late November. Although there's evidence suggesting otherwise, why doesn't a jury get to decide whether Garcia is credible and decide how much weight to give that evidence? The Washington Supreme Court has said intermittent and variable complaints of pain, unassociated with the impairment, are not notice. And similarly, a various request. So as a matter of law? Yes. As a matter of law. Even if we give her all those inferences, you're saying as a matter of law that is not notice. Yes, under the Washington Supreme Court interpretation of Washington law against discrimination. The variable intermittent requests for a transfer or the variable reports of pain without that link to a substantial limitation or to a particular condition are not notice. The employer is not charged. I'm sorry, did I mean to interrupt? What accommodation did your client offer Ms. Garcia? Well, once it had notice. I'm looking for a word, a description. It depends on the time period. Once it had notice that she had a substantially limiting physical condition in her left wrist, then that was January 5th, 2012, when she brought the doctor's note to her supervisor. Then her supervisor did say, he didn't try to interpret limit use of left wrist. He said, eliminate the use of your left wrist. Don't use it. Just do the first sort position one handed. And don't worry about your productivity. I understand that you may be slower, but she was first to arrive first on the line. So first sort is where the garments come in in the morning and you start with first sort. And then the second sort position comes on a little bit later to start their shift so that they have something to sort when they get there because it goes on down the line. So he basically said to her, don't worry about productivity. I understand you'll be slow. Do it one handed. So the accommodation that your client offered Ms. Garcia was to work with one hand? To completely cease using her left wrist, which is what the doctor had said was limited. In the first sort position. Right. And when she vehemently refused to do that and refused to even try, then he offered her the option of trying to work in the shakeout position, a position where there were also garments available. Suppose an employer proposes a ridiculous, she thought that was ridiculous. Suppose they impose a ridiculous accommodation, something like, try grabbing garments with your toes, okay? Is the employee required to try that accommodation or doesn't a jury get to decide whether they think that's a reasonable accommodation? Well, I think without even trying, she has ceased engaging in the interactive process. She has cut off the dialogue between employer and employee. And they didn't ask her to grab it with her toes. They said, and we've provided pictures in the record, they said, just use one hand, you know? It may not be- Document and go, well, I don't know, we can't use the left, right? Right. Using her right hand, and we've shown pictures where you could stand in the facility at the first sort station, reach to one side, grab the garments, and yes, you'd have to do them one at a time, but he said, don't worry about your productivity. And I think that, you know, on its face, without even trying it, I mean, that's the employer offering a reasonable accommodation. It doesn't have to be the employee's preferred accommodation. And again, she couldn't go back to her prior position. Well, I'll say that, but then I guess I say, why isn't there a fact issue as to whether Cintas sufficiently participated in the interactive process if Cintas suspended and then fired Garcia after proposing only two accommodations? Why isn't that a tribal issue? Because the accommodation issue is separate from her insubordination and termination. The termination was a direct result of her acknowledged and admitted insubordination, yelling and absolutely berating her manager, the plant manager here, not just her supervisor, but once she was called into the office, really screaming and yelling at the plant manager when he, in a calm voice, and she admits he was calm, you know, directed her to take account of her current behavior. She wouldn't. She continued yelling. Her termination, really, it's not properly characterized as a suspension of the interactive process. You're on termination. Right. It's separate. The interactive process was terminated by Ms. Garcia when she wouldn't try any of the accommodations offered by Cintas where they completely eliminated the need for her to use her left hand. Didn't try to interpret what limit use of left hand meant, but just said, don't use your left hand. We understand you came in with this physical restriction. We are honoring it. You know, don't do anything that would be counter to your doctor's orders. And she demanded to go sort used hangers, which requires use of both hands and wrists. And so, I mean... What was she doing before she was assigned, taken on a temporary basis to first sort? Right. She was doing a kind of a hybrid position, folding coveralls and at times sorting hangers. And did she have a problem with her hand then? That was the position in which she injured her wrist. And at the time she injured her wrist in August of 2011, she received physical therapy. Cintas worked with her to come up with a different folding technique that would keep her wrist stiff. She was still using her left hand. She had a wrist splint and she periodically visited the doctor. Now, this was a vocal employee. I think it's very clear in the record. This was not someone who was shy or who was willing to be cowed by anyone. And so, in the entire time that she was in this position from November through January 5th when she brought in the doctor's note, at no time did she make a request to transfer that was clearly in connection to her wrist injury because as soon as she did, as soon as she said, I can't do this with my wrist, Cintas sent her to go see a doctor. She never completed an incident report which she has testified she understood was the absolute policy and practice and required if you were injured at work or had an injury that was affecting your work. She never presented Cintas with a doctor's note. She never went to see the doctor and in fact on January 3rd when she said she couldn't do it anymore, she asked Cintas to delay seeing a doctor. She never displayed performance deficiencies that would have given Cintas an indication that she was substantially limited in any way from performing this position. She never... Did she ever suggest that she would willingly return to her former position? No. At the time where she was arguing with her floor supervisor, she was demanding to go sort hangers. These are hangers that come back on a laundry truck after deliveries and they're sometimes twisted and bent and what they need, you need to straighten them out and sort them so that they lay flat in a line and can be used again for future garments. So that is the only thing she demanded to do. She did not demand to go back to her previous position which was folding coveralls. I don't know that really Cintas would have been comfortable with that at that point because she was not wearing her wrist splint and at no time in November or December wore her wrist splint to work and that would have, in Cintas' opinion, required use of her left wrist and Cintas was offering accommodations that eliminated the use of her left wrist. But one of the accommodations that was not offered was a return to her prior position. Right. That is correct because it definitely required the use of both hands. All right, even if the court determines that somehow Cintas did receive notice of a need for accommodation, this court can affirm the summary judgment ruling on any ground in the record and I think the record is expressly clear that there is no evidence that before January 3, 2012, Ms. Garcia was substantially limited in any way and under Washington law, in order to be eligible for a reasonable accommodation, the employee must not only have a known condition but must be substantially limited in their ability to perform their job. Nothing here in the record indicates to Cintas that Ms. Garcia was substantially limited and as I said, she did not bring in a doctor's note, she did not miss work, there were no external indications that would have provided notice to Cintas. I notice from the docket sheet you're from Cincinnati. I am. Are you a member of the Ninth Circuit Bar? I am. Good. Pro hoc. Great. Unless the court has any further questions, I believe I'm finished. All right. Thank you, counsel. Thank you. Rebuttal. Thank you, your honors. Briefly, where was the accommodation in December when Ms. Garcia told her supervisor explicitly and it's stated in volume two, excerpt of record volume two, page 50, I told him in And from there on in, that was my voice telling him, it hurts, it hurts, it hurts. Let's assume that you satisfy, your client satisfies the notice from, isn't a fair record of the record that she wanted to choose her own accommodation? No. Tell me why. Because what she, what she was saying is the position, what you have me do, which is first sort, it is hurting me. That position doesn't work. And we already know that Cintas had a very simple, reasonable accommodation that they could have then used. And that is, go back to the fold and the sorting of hangers. Were they required to do that? That's the difficulty is if that, I mean, that may have been the preferred accommodation if the client, but that doesn't mean that Cintas was required to do that. I think in this case, your honor, where the employee who has nearly nine years of experience and they're telling you this position, this, this isn't working and I'm hurting and you're continuing to hurt me and I'm giving, I'm, I'm trying to help you. You ought to be looking at reasonable accommodation. That's what they're required to do. And I think it's a jury question. I guess, but if you're, if it's supposed to be a give and take and if someone proposes something that would use the wrist that is injured, then I'm just saying if they did that, then the next position they're in is, you know, what's wrong with you? You know, you're, you're causing more stress on the injured wrist. No, they're not. She's not using her wrist in a pinching, grabbing, twisting fashion. The accommodation is to be able to fold. Primarily you're using one hand and you're not bending or twisting that wrist. But the hangers, the hangers. Sorting hangers. That's a one handed affair. But they said that you have to straighten them out if they're bent and you have to use both wrists. She was, but she was already proven in the record from August all the way to the beginning of November that that was an effective accommodation and it was one that was available and our position is it's for a jury to decide. Was it reasonable for Cintas to say, no, you're not going back there. You're going to do this first sort position, which you're even though you with your nine years of experience, you're telling us this is harming you. And we know if the doctor gave a slip saying limit use of the wrist and Cintas offered a position where the wrist was not used. How is that not a reasonable accommodation? Because our client's position is she couldn't do that position without using, without, no, she actually was doing it all of December. First sort. She was doing it. Nobody then was saying, your honor, hey, why don't you do that one handed when she was repeatedly telling her supervisor, according to the record, this is hurting me. When is the replacement coming in? I told you no more than two weeks of this. The record doesn't reflect that she was doing it with one hand at that point, right? That's right. And why she was being hurt. It was too. It was a two handed position. So when the employer then comes in and says, well, now I'll do, here's how I'll get out of this. I'll just say, hey, just do it with one hand. And she says, that's not, that's not workable. That's completely awkward to do it that way. And remember, these are, these are belts that are moving. This is, I know the pictures look like it's sort of a simple this to this. Well, these are, these are belts that are moving. And so the natural way to do that is to reach out. You're using, you're pinching and you're grabbing. And that was the, that was the problem. And when she put them on notice in December, what did they do to accommodate? Nothing. Just hang in there. Or according to her testimony, the supervisor said, I'll faithfully, I'll, I'll, I'll find somebody to replace you. That's not an accommodation. Counsel, we understand your argument. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Schroeder v. United States.
judges: Hawkins, Rawlinson, Callahan